UNITED STATES DISTRICT COURT      c
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| EDDIE DEAN JONES, Plaintiff | CIVIL ACTION NO. 2:20-CV-01055 |
| VERSUS | JUDGE CAIN |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is Eddie Dean Jones's ("Jones's") appeal of the cessation of Social Security disability insurance benefits ("DIB") by the Commissioner of Social Security (the "Commissioner"). ECF No. 1.

Because the ALJ erred in applying the legal standards, substantial evidence does not support the ALJ's decision, and the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

## I.    Background

Jones filed an application for period of disability and DIB under Title II of the Social Security Act (the "Act") on April 11, 2006.[1] ECF No. 7-1 at 225, 230. Jones alleged a disability onset date of May 1, 2005. *Id.* Jones alleged a history of hip problems, high blood pressure, and diabetes. ECF No. 7-1 at 243-263.

---

[1] A Childhood Disability Beneficiary application was also filed on Jones's behalf on May 15, 1995, and he was found to be disabled as of April 30, 1997, but payments were terminated. ECF Nos. 1 at 2, 7-1 at 81-82.

In a January 4, 2008 determination, Jones was found disabled and eligible for DIB beginning May 20, 2005.  ECF Nos. 7-1 at 18, 8 at 1.

On June 14, 2017, the Commissioner determined Jones was no longer disabled as of that date.  ECF No. 7-1 at 18, 121-128.  Jones requested reconsideration.  *Id.* at 111, 132.  A Disability Hearing Officer upheld the decision.  ECF No. 7-1 at 18, 287.

On July 15, 2019, Jones's request was heard before an administrative law judge ("ALJ").  ECF No. 7-1 at 36-73, 159, 18.  Jones appeared with Deborah D. Robichaux, a vocational expert ("VE").  ECF No. 7-1 at 18, 36.  He also appeared with his attorney Jason A. Weaver ("Weaver").  *Id.*  On November 26, 2019, the ALJ found Jones was no longer disabled as of June 14, 2017, and that Jones has not become disabled again since that date.  *Id.*  at 15-28.

On June 16, 2020, the Appeals Council denied Jones's request for review.  ECF No. 7-1 at 6-14.  The ALJ's November 26, 2019 decision thus became the final decision of the Commissioner.  ECF Nos. 7-1 at 18, 6.

Jones filed this appeal for judicial review.  ECF No. 1.  He asserts that the Commissioner's decision is not supported by substantial evidence and is based on legal error.  ECF No. 1 at 4.  Specifically, Jones asserts the ALJ erred as follows:  (1) by failing to give controlling weight to the opinion of Jones's treating physician regarding his condition and limitations; and (2) in failing to properly account for Jones' Residual Functional Capacity ("RFC") in light of the medical evidence and Jones's sworn testimony regarding his condition and limitations.  ECF Nos. 1 at 4-5,

8 at 5. Jones also seeks attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). *Id.* at 5.

### A.    <u>Administrative Hearing</u>

At the July 15, 2019 administrative hearing, Weaver confirmed that Jones was still obtaining benefits and that this case was an appeal of the cessation of his benefits by the agency. ECF No. 7-1 at 42. Weaver stated Jones continues to be disabled with impairments to his hip, lower back, and neck. *Id.* at 43. He stated Jones has had hip problems since 2005, a left hip replacement in 2014, and an MRI in September of 2017. *Id.* He also stated that an MRI of the right hip showed severe atrophy of a multifidus muscle, a muscle that provides stability to the lumbar spine. *Id.* Weaver stated this shows in cervical and lumbar MRIs. *Id.* Weaver also referred to a RFC form filled out by Jones's primary care physician Dr. Charles Ray ("Dr. Ray"). *Id.* at 45.

Jones testified his last visit to the doctor was June 26, 2019. *Id.* at 46. Jones stated he had a check-up on his diabetes and checked his back and "foot drop." *Id.* at 47. He was prescribed a brace, but it had not yet come in. *Id.*

Jones testified he has not worked since May 15, 2005. *Id.* He stated he was receiving Social Security disability. *Id.* at 48. He also received a settlement from an automobile accident in June of 2017. *Id.* Jones last worked at Global Sante Fe Drilling Company as a crane operator. *Id.* at 48-49. He applied for jobs in order to receive his workman's compensation. *Id.* He stated he was on crutches, and no one would hire him. *Id.*

Jones's primary doctor is Dr. Ray, but Dr. Matthew Abraham ("Dr. Abraham") treated him for the 2017 accident on referral from his lawyer. *Id.* at 49-50.

Jones was also involved in a car accident in 2005. *Id.* He was coming home from a party and his ex-wife ran him off the road, causing him to hit a culvert. *Id.* He was unable to work after that. *Id.*

Jones – age 40 at the time of the hearing – testified he has a current driver's license and can drive a car. *Id.* He completed the eighth grade and spent four years in the ninth grade. *Id.* He never obtained a GED or any other certifications. *Id.*

Jones takes medication for diabetes. *Id.* at 51. His blood pressure gets elevated when his pain is high. *Id.* He also still has hearing problems. *Id.* He needs hearing aids but cannot afford them. *Id.* He called Medicaid about the hearing aids but got the run around. *Id.* at 52. Jones went to the Miracle Ear doctor in Lake Charles in 2019 for assistance with obtaining his hearing aids. *Id.* But Jones testified he could still hear what the ALJ was saying. *Id.*

Jones testified that on a typical day he gets up, takes his medicine, and watches the news. *Id.* He then would walk around the house, go outside, just sit around for a couple of hours, or lie down. *Id.* at 53. He has trouble putting on his socks but has something now to help him with that. *Id.* He was told by Dr. Abraham not to lift anything heavy over five pounds. *Id.* Jones's attorney added that this also in the RFC by Dr. Ray. *Id.*

Jones testified that his grandkids – ages seven and three – sometimes visit him. *Id.* at 54. He does not take care of them much. *Id.* He cannot lift the three-year old. *Id.*

Jones uses a cane to get around. *Id.* Dr. Chris Ashee provided him a cane in 2005. *Id.* Dr. Ray suggested Jones use the cane because he was having problems with tripping and falling due to his dropped foot. *Id.* Jones testified he had a foot brace that broke. *Id.*

Jones's attorney also questioned him. *Id.* at 56. Jones testified he is married and 40 years old. *Id.* He lives in a one-story home with two steps to get into the home. *Id.* Jones testified he experiences pain on a regular basis in his neck and back, radiating into his arms, his bottom, and down his legs. *Id.* at 57. He takes Flexeril and Narco for his pain. *Id.* He also uses a TENS unit. *Id.*

Jones testified his hips start burning after standing in one spot. *Id.* at 58. Walking relieves it. *Id.* He can only stand in one spot for 30 minutes to an hour. *Id.* at 58-59. He must lie down two to three hours a day due to pain. *Id.* at 59. On a really bad day, he is unable to get out of the bed. *Id.* He has bad days three to four times a week. *Id.* On a good day, he gets up and walks around the house or the yard. *Id.* at 60. He doesn't do any chores or yardwork. *Id.* His wife takes care of all of that, as well as cooking, taking out the trash, and cleaning. *Id.* Jones can drive locally, but not long distances due to his pain. *Id.* at 61. He can drive about 30 minutes. *Id.* Jones has a prosthesis in his left hip. *Id.* at 62.

Jones testified he never had a problem with alcohol or drugs and never had any mental health treatment. *Id.* His diabetes is controlled with insulin. *Id.* at 63. He cannot afford some of the insulin. *Id.* Jones's wife works at McDonalds, but she does not have a health plan. *Id.* at 64. He has not asked his doctor about getting medicine from the drug company directly. *Id.* But his doctor gave him some trial medicine. *Id.*

Jones testified he went to the emergency room for pain about twice a year. *Id.* at 65. In June of 2017, he went for pain in his right hip and was discharged with instructions to resume normal activity. *Id.* at 66. He was told to follow-up with his doctor. Jones's attorney confirmed there was a follow-up, but they could not find the record. *Id.* at 66-67.

The VE sought clarification on Jones's work as a crane operator. *Id.* at 69. Jones testified he operated a crane offshore. *Id.* He was hired on as a crane operator helper and did whatever they told him to do. *Id.* He would lift up to 25 to 30 pounds. *Id.* Jones stated he was hired on in 2000 and worked there for five years. *Id.* He quit after his 2005 car accident. *Id.*

The VE then testified that Jones's past work consists of driller/helper, DOT[2] number 930.684-026, heavy strength, skill SVP level is 4. *Id.* at 70. The ALJ asked the VE to assume a hypothetical individual with Jones's age, educational, and vocational background limited to a light range of work, lifting and/or carrying occasionally 20 pounds, frequently 10. *Id.* The ALJ asked the VE to further assume

---

[2] Dictionary of Occupational Titles.

the light range of work is regular except that standing and/or walking with normal breaks is only 4 hours out of an 8-hour workday, instead of 6, but everything else is standard for light within the range of the Social Security rules and regulations. *Id.* at 70-71. The ALJ asked the VE to assume pushing and/or pulling involved in the operation of hand and/or foot controls is unlimited within the poundage shown for lifting and/or carrying too. *Id.* at 71. The individual would have postural limitations, including: never climbing ladders, ropes, or scaffold; can occasionally climb the rest of the posturals; no limitations of manipulation; no limitations in visual; no limitations in communicative; and no limitations in hearing or communication. *Id.* The individual could not be exposed to extreme heat or cold; work at unprotected heights; operate dangerous machinery and/or equipment; engage in commercial driving; could have unlimited contact with the public, supervisors, and coworkers; and could not have a fast-paced production job with quotas like an assembly-line. *Id.*

The ALJ asked the VE whether, based on those limitations, that hypothetical individual could go back to any prior work. *Id.* The VE testified that the hypothetical individual could not. *Id.* The VE explained that the prior work was at the heavy level and with the restriction to light work limited to no climbing ropes, ladders, things of that nature, that alone would limit it. *Id.* at 72. The ALJ asked if there would be any other jobs in the national economy that a person with those limitations could perform. *Id.* The VE testified there are other jobs in the national economy that such an individual could perform. *Id.*

The VE stated that the individual could work the following jobs:  (1) a document preparer, DOT number 249.587-018, SVP level 2, sedentary strength (68,815 jobs in the national economy); (2) a tube operator, DOT number 239.687-014, SVP level 2, sedentary strength (17, 105 jobs in the national economy); and (3) a waxer, DOT number 779.687-038, SVP level 2, sedentary strength (15,273 jobs in the national economy).  *Id.* at 72-73.

The ALJ asked whether a position as a cashier could perform the work.  *Id.* at 73.  The VE testified a cashier could not perform the prior work because most cashiers are required to stand a minimum of six hours.  *Id.*

The ALJ asked the VE to assume further that the hypothetical individual was in a full range of sedentary with the same limitations but changing the lifting and/or carrying to sedentary.  *Id.*  The ALJ asked if that individual would be precluded from any jobs in the sedentary range.  *Id.*  The VE testified that the three jobs she listed would remain available.  *Id.*

Weaver asked the VE to assume the same hypothetical individual with the same limitations, except that the individual would have to lie down for two hours out of an eight-hour workday.  *Id.*   The VE stated that the individual – with being required to lie down for two hours, if over and above the normal breaks – would not be able to meet the standards of quality or quantity needed in competitive employment.  *Id.* at 73-74.  The VE stated the same would be true for ALJ's second hypothetical with just sedentary.  *Id.* at 74.  The VE testified that, in the unskilled arena, anytime a person is off-task for any reason, 15% or greater, that they would

have a difficult time meeting the standards needed of competitive employment.  *Id.*
Even though the individual could do the job, they would not be able to sustain a
competitive level of employment and would not be retained.  *Id.*  Weaver asked the
VE to further assume that if the hypothetical individual were to have three to four
unexcused absences a month whether the same rationale would apply.  *Id.*  The VE
testified that with that level of absenteeism, that individual would not be retained.
*Id.* at 74-75.

The ALJ asked the VE to assume that the hypothetical individual would be off
task 20% of an eight-hour workday due to his impairments and/or pain, not counting
a 15-minute morning break and 15-minute evening break and lunch period.  *Id.* at
75.  The VE stated that individual could not go back to his prior work.  *Id.*  While the
individual could have the skills to perform the job, at that level of off-task behavior
or being away from the workstation, the individual is unable to maintain competitive
employment and the ability to keep the job would be markedly limited.  *Id.*  The ALJ
asked the VE to assume the individual would miss two days' worth of work a month,
every month, unplanned and unscheduled due to mental or physical impairments.
*Id.*  The VE testified that individual could not go back to prior work.  *Id.*  And he could
not do any of the jobs she listed.  *Id.*

The ALJ confirmed with Weaver that Jones has a note from the doctor saying
Jones must lie down during the workday.  *Id.* at 75-76.  The ALJ advised Weaver to
send any prescription stating that Jones must lie down and any medical evidence on
which the doctors base that determination.  *Id.* at 76.  The ALJ questioned Jones

about Dr. Ray's note that he exercises two days per week. *Id.* Jones testified he only walks around the yard but otherwise does not exercise. *Id.* The ALJ left the record open for Weaver to submit any additional medical evidence from Dr. Ray. *Id.* at 77.

### B.    ALJ's Findings

The Commissioner is required to periodically review a claimant's continued entitlement to benefits. 20 C.F.R. § 416.994(a). The Social Security Administration may terminate benefits if the agency concludes, after reviewing a claimant's case, that the claimant's impairment "has ceased, does not exist, or is not disabling . . . ." 42 U.S.C. § 423(f). In a typical social security case, where the issue is whether a claimant is disabled and should therefore be granted Social Security benefits in the first place, the Commissioner (through an ALJ) applies a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). But when the issue is cessation of disability benefits due to an alleged medical improvement,[3] the ALJ

---

[3] Medical improvement is any decrease in the medical severity of the impairment(s) which were present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with the impairment(s). 20 C.F.R. § 416.994(b)(i). The "most recent favorable medical decision" is the latest decision involving a consideration of the medical evidence and the issue of whether a claimant or recipient was disabled or continued to be disabled which became final. 20 C.F.R. § 416.994(b)(1)(vii). This decision is also known as the "comparison point decision" ("CPD").

To determine whether medical improvement has occurred, the ALJ must compare the current medical severity of the claimant's impairments to those that were present at the time of the CPD. *Bruno, M v. U.S. Comm'r, Soc. Sec. Admin.*, 2020 WL 5269741, at *4 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom. Bruno v. Soc. Sec. Admin.*, 2020 WL 5261150 (W.D. La. Sept. 3, 2020) (citations omitted). In the event an ALJ fails to follow the proper legal standard for the scenario of a missing CPD file, the Fifth Circuit had held that "remand to the Commissioner is appropriate." *Hallaron v. Colvin*, 578 F.App'x. 350, 354 (5th Cir. 2014). A claimant's "entitlement to benefits depends on further factual development and the application of a standard that the Commissioner is best placed to apply." *Id.* "20 C.F.R.

must follow an eight-step evaluation to determine if a claimants disability benefits should continue. *See* 20 C.F.R. § 404.1594(f). Under that eight-step evaluation process, the ALJ must determine:

(1) whether claimant is engaging in substantial gainful activity;

(2) if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) if impairments do not meet a listing, whether there has been medical improvement;

(4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work;

(5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

(6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

---

§ 416.994(b)(2)(iv)(E) precludes a finding of medical improvement when the file upon which the claimant's most recent favorable determination of benefits was based cannot be found and is not reconstructed." *Hallaron*, 578 Fed.Appx. at 353.

Although this issue was not raised on appeal, the Court observes that the disability examiner noted in the side-by-side comparison that the CPD folder could be not located. ECF No. 7-1 at 82. Some CPD medical sources were in the record, but the January 4, 2008 CPD was not. Other than stating the CPD date, the ALJ made no mention of the CPD file or that attempts were made to reconstruct the file for the purpose of comparing for the evaluation of medical improvement. The record is unclear whether the ALJ had the complete or reconstructed CPD file.

*See* 20 C.F.R. § 1594(f); *see also* 20 C.F.R. § 416.994; *Griego v. Sullivan*, 940 F.2d 942, 944, n. 1 (5th Cir. 1991).  The Commissioner bears the burden of proving a claimant is no longer disabled as of the cessation date.  *Waters v. Barnhart*, 276 F.3d 716, 717 (5th Cir. 2002); *see also Winston v. Comm'r of Soc. Sec.*, 2022 WL 775336, at *3 (E.D. La. Feb. 11, 2022).[4]

Here, the ALJ applied the eight-step analysis and made several findings.  ECF No. 7-1 at 20.  The ALJ stated that the most recent favorable medical decision finding that Jones was disabled is the determination dated January 4, 2008.  *Id.*  The ALJ identified this as the CPD.  *Id.*  The ALJ determined that, at the time of the CPD, Jones had the following medically determinable impairments:  traumatic acetabular and femoral neck fracture, status-post left hip surgery; cervical injury; and diabetes mellitus.  *Id.*  The ALJ stated these impairments were found to result in the RFC to perform less than the full range of sedentary work.  *Id.*

The ALJ found that, through the date of the decision, Jones had not engaged in substantial gainful activity.  *Id.*  Rather, the medical evidence establishes that since June 14, 2017, Jones has had the following medically determinable impairments:  degenerative disc disease and myofascial strain of the cervical and lumbar spine; bilateral hip dysfunction; contusion to the left hand; obesity; and diabetes mellitus.  *Id.*  The ALJ identified these as Jones's current impairments.  *Id.*

---

[4] "Even though the Commissioner bears the burden of proof in cessation cases, the standard of review on appeal is the same as the standard in other Social Security disability cases." *Sibley v. Berryhill*, CV 18-874-EWD, 2020 WL 1536404, at *3 (M.D. La. Mar. 31, 2020) (citations omitted).

The ALJ found that, since June 14, 2017, Jones has not had an impairment or combination of impairments which met or medically equaled the severity of any of the listed impairments in Appendix 1. *Id.* The ALJ determined that the medical evidence supported a finding that medical improvement occurred on June 14, 2017. *Id.* at 21.

The ALJ stated that the RFC was identical for both the CPD impairments and the new impairments, noting she assessed all impairments for the entire duration of the relevant period with the RFC. *Id.* at 22. Since June 14, 2017, Jones retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except the following limitations: the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk (with normal breaks) for four hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally perform all other postural activities; can have no exposure to extreme heat or cold; cannot work at unprotected heights; cannot operate dangerous machinery and/or equipment; cannot engage in commercial driving; can have unlimited contact with the public, coworkers, and supervisors; and cannot perform a fast-paced production job (i.e. assembly line work). *Id.*

The ALJ found that Jones's medical improvement is related to the ability to work because it resulted in an increase in his RFC. *Id.* at 26. The ALJ determined that, since June 14, 2017, Jones has continued to have a severe impairment or combination of impairments. *Id.* And the ALJ determined that, since June 14, 2017, Jones has been unable to perform past relevant work. *Id.* at 27.

The ALJ further found that, on June 14, 2017, Jones was a younger individual age 18-49 with a limited education and the ability to communicate in English. *Id.* Transferability of job skills was not material to the ALJ's determination of disability because she found that using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled." *Id.*

The ALJ also determined that, since June 14, 2017, considering Jones's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Jones could have performed. *Id.* The ALJ concluded that Jones's disability ended on June 14, 2017, and that Jones has not become disabled since that date. *Id.* at 28.

## II.    Law and Analysis

### A.    Scope of Review

In considering Social Security appeals, the Court is limited by 42 U.S.C. § 405(g) to a determination of whether "substantial evidence" exists in the record to support the Commissioner's decision, and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the

evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.** **The ALJ committed reversible error.**

Jones argues the ALJ failed to properly apply controlling law in evaluating the treating source medical opinion of Dr. Ray. ECF No. 8 at 5. He asserts that his application was filed before March 27, 2017; thus, his treating doctors' opinions are entitled to be evaluated under 20 C.F.R. § 404.1527. ECF No. 8 at 6. Jones argues that Dr. Ray's opinion is entitled to controlling weight and deference under the "treating source rule." *Id.* He further asserts the ALJ relied on a generic discharge note from the emergency room that Jones "can return to normal activity" and that

she put forth as substantial evidence Jones's report to Dr. Ray that he exercises twice a week and gets six hours of sleep. *Id.* at 8.

The Commissioner argues the ALJ properly discussed and discounted Dr. Ray's opinion because his treatment records and other record evidence do not support his opinion and because his opinion was not consistent with the record evidence. ECF No. 9 at 4 (citing the "prior rule" 20 C.F.R. §§ 404.1527(c)(3), (c)(4)). The Commissioner cites to the prior rules without any discussion. Thus, the Commissioner does not appear to dispute or rebut that the prior rules apply to the ALJ's decision.

Neither side presented any case law or argument to establish why either the prior or new regulations would apply in determining whether the ALJ applied the proper standard. On January 18, 2017, the SSA published revised regulations concerning how the agency considers medical opinion evidence in disability determinations. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 F.R. 5844, 2017 WL 168819 (Jan. 18, 2017). The new regulations provide that, for claims filed on or after March 27, 2017, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).[5] The revised regulations did not retain the

---

[5] Under the new regulations, rather than assigning weight to the medical opinions, the Commissioner must articulate "how persuasive" he finds the medical opinions. 20 C.F.R. § 416.920c(b). And the Commissioner's consideration of the persuasiveness of medical opinions is guided by the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment

longstanding "treating source rule," which requires deference to treating source opinion evidence in absence of certain other specific findings. *See* 20 C.F.R. § 404.1527, 20 C.F.R. § 416.927.  Although the SSA regulations have been amended effective March 27, 2017, the new regulations apply only to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c.  They also apply to all continuing disability reviews ("CDRs"), with certain exceptions, as discussed below. *See* Social Security Administration, Program Operations Manual System ("POMS"), DI 24503.050 (effective Apr. 3, 2017 to present).

Where there is a CDR determination or decision, under HALLEX § I-5-3-30.IV.E(1), the older regulation is applied if:  (1) the initial claim is filed before March 27, 2017; and (2) this is the first CDR for the claim.  The older regulation is also applied if:  (1) the initial claim is filed before March 27, 2017; (2) there has been a prior CDR; and (3) the CPD is before March 27, 2017.  The new regulation is applied if either: (1) the initial claim is filed on or after March 27, 2017, or (2) the initial claim is filed before March 27, 2017, there has been a prior CDR, and the CPD is after

relationship, and the examining relationship); (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5); 20 C.F.R. § 416.920c(c)(1)-(5).

"Supportability" and "consistency" are the most important factors. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).  The ALJ must explain these factors, but he need not expound on the remaining three unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.* at § 416.920c(b)(2)-(3).  Furthermore, the fact that a medical source actually examined the claimant or specializes in an area germane to the claimant's medical issues are not primary or dispositive considerations in assessing the medical opinion. *See* 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

March 27, 2017.  The same rules will apply throughout the entire CDR determination, including the appeals process.

Here, however, Jones's claim is on appeal for medical cessation.  Pursuant to POMs and HALLEX, when a medical cessation or termination decision is appealed and a new period of disability is considered, as it was here, the old rule (20 C.F.R. § 404.1527) applies if the initial request for review of the determination was filed on or after March 27, 2017 and the old rule was used in the initial medical cessation decision.[6]  *See* POMS DI 24503.050(D)(7) (explaining that if the initial request for review was filed "[o]n or after March 27, 2017 and the prior rules were used when finding medical cessation, use the prior rules to evaluate the new period of disability"); HALLEX § I-5-3-30.IV.E(1) (same).  But, where the initial request for review was filed on or after March 27, 2017, and the current rules were used when finding medical cessation, the current rule (20 C.F.R. § 1520c) applies to evaluate the new period of disability.  *Id.*  Adjudicators use the date of the initial request for review of the disability cessation determination as the filing date for a new period of disability.  *See* SSR 13-3p.

Jones's original applications were filed on April 11, 2006.  ECF No. 7-1 at 225, 230.  However, Jones's initial request for review of the disability cessation was dated June 26, 2017, which is after March 27, 2017.  ECF No. 7-1 at 110.  A CDR cessation

---

[6] If the beneficiary's disability has medically ceased, the determination or decision must specifically address the initial cessation determination and the beneficiary's eligibility (or ineligibility) for a new a period of disability through the date on which the appeal determination or decision is being made, or, if earlier, through the date last insured.  Soc. Sec. Ruling, SSR 13-3p; *Appeal of an Initial Med. Disability Cessation Determination or Decision*, SSR 13-3P (Feb. 21, 2013).

determination was issued on June 14, 2017.  ECF No. 7-1 at 88, 98.  However, it is not clear from the record whether the old or new regulations were applied in the initial decision terminating Jones's benefits.

But a review of the record shows the SSA requested disclosure of Tulane University Hospital medical records for "Disability Determination Services" in January of 2017.  ECF No. 7-1 at 334.  And his CDR appears to have been conducted prior to March 27, 2017.  ECF No. 7-1 at 242.  His CDR Interview was conducted on August 29, 2016.  ECF No. 7-1 at 241, 256.  His initial cessation determination explanation was issued on June 13, 2017.  ECF No. 7-1 at 79, 89.  On June 14, 2017, the SSA issued a Notice of Disability Cessation.  ECF No. 7-1 at 106.

There is no indication which rule – the prior or new rule – the SSA utilized in the initial decision to terminate his benefits.  The Disability Hearing Officer decision was issued on June 6, 2018, concluding that Jones is not disabled and that his disability case was ceased on June 14, 2017.  ECF No. 7-1 at 121-128.  Jones requested reconsideration of his disability cessation on June 28, 2017.  ECF No. 7-1 at 111.

Although the cessation date was in June of 2017 and Jones's initial request for review of disability cessation was filed after March 27, 2017, it appears that the old rule was likely used in the initial cessation determination.  And the parties do not dispute that the old rule (20 C.F.R. § 404.1527) applies here.  ECF Nos. 8, 9, 10.  Therefore, under the POMS and HALLEX, the old rule would apply to the ALJ's evaluation.  *See* POMS DI 24503.050(D)(7); HALLEX § I-5-3-30.IV.E(1).[7]

---

[7] The undersigned found no factually similar cessation cases under the new rules that have come before the United States Court of Appeal for the Fifth Circuit.  The United States

Here, it is not clear which regulations the ALJ applied in evaluating the medical opinions she considered. The ALJ did not clearly state the legal standard she applied. ECF No. 7-1 at 22, ˗27. First, the ALJ's decision states that in making her assessment, she "considered the medical opinion(s), prior administrative medical finding(s), and additional relevant evidence in accordance with the requirements of 20 C.F.R. § 404.1520c" – indicating application of the new regulation. ECF No. 7-1 at 22. And later in her RFC assessment, the ALJ's decision includes some language from the new regulations. *Id.* at 24. Repeating almost verbatim the new regulations under § 404.1520c, the ALJ stated that, "[a]s for the medical opinion(s) and prior administrative medical finding(s), [she] will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources." *Id.*; *see* 20 C.F.R. § 404.1520c(a). She goes on to state she "fully considered the medication opinion(s) and prior administrative medical finding(s) in [Jones's] case." *Id.* This suggests the ALJ applied the new standard and determined the persuasiveness of the medical opinions without any discussion of "weight."

---

District Court for the Eastern District of Louisiana applied the new regulations where a plaintiff's disability purportedly ceased on August 1, 2018, but the court offered no explanation of how it determined the new regulation applied. *Winston v. Comm'r of Soc. Sec.*, 2022 WL 775336, at *6 (E.D. La. Feb. 11, 2022); *but cf. Ramphal v. Saul*, 2019 WL 3997893, at *3, n.6 (M.D. Fla. Aug. 7, 2019) (applying pre-March 27, 2017 regulations to benefits cessation case where claimant's application for benefits was filed in 2000), *report and recommendation adopted sub nom. Ramphal v. Comm'r of Soc. Sec.*, 2019 WL 3997486 (M.D. Fla. Aug. 23, 2019); *see also Hewlett v. Comm'r of Soc. Sec.*, 2022 WL 846071, at *4 (M.D. Fla. Mar. 22, 2022).

Regardless, the Commissioner does not appear to dispute the application of the old regulations under 20 C.F.R. § 404.1527. *See* ECF Nos. 7-1 at 27, 9 at 4.

The ALJ went on to state that she "also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527" – her sole reference to the old rule. *Id.* at 27. However, there is no indication the ALJ applied the old regulation.[8] There is no assignment or discussion of "weight" in her opinion and the

---

[8] Under the old regulation, the ALJ generally must give the opinion of the claimant's treating physical "controlling weight." 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). Because the treating physician is most familiar with the claimant's impairments, his opinion should be accorded great weight in determining disability. *See Giles v. Astrue*, 433 Fed. Appx. 241, 246–47 (5th Cir. 2011) (citing *Newton*, 209 F.3d at 455). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *See Giles*, 433 Fed. Appx. at 246-47 (citing 20 C.F.R. § 404.1527(d)(2)). Likewise, when a treating physician has reasonable knowledge of the impairment, his opinion is given more weight than an opinion from a non-treating physician. *See id.* Treating physicians' opinions also receive greater weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *See id.*

However, the Commissioner may give less weight to a treating physician's opinion about a condition outside his area of expertise. *See id.* The ALJ need not given the treating physician's legal conclusions – such as statements that the claimant is "disabled" or "unable to work" – any special weight or significant. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citations omitted). Where the opinion of the claimant's treating physician is "brief and conclusory . . . or otherwise unsupported by the evidence," the ALJ is not required to afford it controlling weight. *Perez*, 415 F. 3d at 465-66 (quoting *Greenspan*, 38 F.3d at 237). Responses to a "questionnaire format" are characterized as "typi[cally] 'brief or conclusory' testimony" when they lack "explanatory notes" or "supporting objective tests and examinations." *Foster v. Astrue*, 410 Fed.Appx. 831, 833 (5th Cir. 2011).

An ALJ "may reject the opinion of the treating physician *only* if the ALJ performs a *detailed analysis* of the treating physician's views under" the factors set out in 20 C.F.R. 404.1527 and 416.972. *See Beasley v. Barnhart*, 191 Fed. Appx. 331 (5th. Cir. 2006) (emphasis in original); *see also Giles*, 433 Fed. Appx. at 246. Under the regulations, an ALJ is required to consider the physician's length of treatment of the claimant, the physician's frequency of examination, the nature and extent of the treatment relationship, the support of the physician's opinion that is afforded by the medical evidence of record, the consistency of the opinion with the medical record, and finally, the physician's specialization. *See Newton*, 209 F.3d at 456; 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

Moreover, the Fifth Circuit has recognized that an ALJ "is not required to give controlling weight to a treating physician opinion when that opinion is contradicted by examining physician evidence." *Walker v. Barnhart*, 158 Fed.Appx. 534, 535 (5th Cir 2005) (quoting *Newton*, 209 F.3d at 458). The Fifth Circuit does not require consideration of each of the six

ALJ specifically stated she did not "defer or give any specific evidentiary weight, including controlling weight." *Id.* at 24. The ALJ's analysis did not apply or explain the "treating physician rule" or the factors to be considered when discounting a treating physician's opinion.

Instead, the ALJ's decision appears to have applied the new legal standard of § 404.1520c. Under the new regulations, the ALJ would be required to "articulate how [she] considered the medical opinions" and "how persuasive [she found] all of the medical opinions," including an explanation of "how [she] considered the supportability and consistency factors" for a medical source opinion. *See* 20 C.F.R. § 404.1520c.

The ALJ specifically recited the new regulation verbatim in stating that she would not defer or given any controlling weight to medical opinions from Jones's medical sources. ECF No. 7-1 at 24. And in going through Jones's medical records, the ALJ explained how she found the State agency medical consultants' assessments persuasive, stating that they are "supported with medical evidence" and "are generally consistent with the longitudinal evidence." *Id.* at 25. The ALJ found the consultative examiner's assessment "generally supported by the relatively normal findings of his examination" but found the longitudinal evidence of record more consistent with limitations to light work. *Id.* The ALJ found that Jones's treating physician Dr. Ray's assessment was "not persuasive" and was "not supported" by his treatment records. *Id.* at 26. Despite the single citation to § 404.1527c, the ALJ's

---

factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Id.*

analysis appears to have applied § 404.1520c, specifically the factors of "supportability" and "consistency."

Fundamentally, the Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986); *see also Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990) (failure to apply the correct legal standard necessitates remand); *Hughes v. Shalala*, 23 F.3d 957, 959 (5th Cir. 1994) ("[W]here the Secretary relied on an incorrect legal standard in assessing the evidence, the denial must be reconsidered."); *Winston v. Berryhill*, 755 Fed.Appx. 395 399 (5th Cir. 2018) (Where the Commissioner commits legal error, "any resulting RFC will not be supported by substantial evidence."). The Court thus expresses no opinion as to whether the ALJ should have given substantial or controlling weight to the opinion of Dr. Ray under the treating physician rule. The Court cannot resolve conflicts of or reconsider evidence. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). And the Court cannot try the issues *de novo* or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Instead, remand is appropriate for the ALJ to appropriately weigh the medical opinions, applying the correct regulatory standard as set forth above.

## III.  Conclusion

Because the ALJ did not apply the correct regulatory standard, the ALJ's decision is not supported by substantial evidence;

IT IS RECOMMENDED that the final decision of the Commissioner be REVERSED, and that Jones's complaint be REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __27th__ day of July, 2022.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

24